**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| VANDA PHARMACEUTICALS, INC.,<br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>FOOD AND DRUG ADMINISTRATION,<br>SCOTT GOTTLIEB, M.D., and ALEX M.<br>AZAR II,<br><br>　　　　　　　　　Defendants. |

Civ. No. 1:19-cv-00301-EGS

**PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANTS' MOTION FOR A
VOLUNTARY REMAND TO THE AGENCY AND FOR A STAY OF THE CASE**

Plaintiff Vanda Pharmaceuticals, Inc. ("Vanda") filed its Complaint because it is committed to sound science and avoiding the unnecessary sacrifice of animals. In its Complaint, Vanda explained that the U.S. Food and Drug Administration ("FDA") may not lawfully treat a non-binding guidance document as imposing regulatory requirements. Vanda further explained that it was arbitrary and capricious for FDA to make a rote demand that animals be killed, while failing to address the substantial evidence Vanda had submitted regarding the superfluous nature of a non-rodent chronic toxicity study for tradipitant.

By filing their motion for voluntary remand, Defendants have waved a white flag. FDA concedes that the issues identified in Vanda's Complaint are "substantial and legitimate." Dkt. 6-1 at 6. FDA's motion effectively admits that the partial clinical hold imposed by FDA in December 2018 (the "Clinical Hold") has no valid legal basis. FDA seeks remand rather than defending this matter on the merits because the Clinical Hold is indefensible, as Vanda has noted.

Because the Clinical Hold was imposed without a valid legal basis, Vanda does not object to FDA's request for a voluntary remand. To be sure, upon remand, Vanda expects FDA,

consistent with its obligations under the Administrative Procedure Act ("APA"), to conduct a good faith, scientifically sound, and expedient assessment of Vanda's evidence.  *See, e.g.*, *Pub. Employees for Envtl. Responsibility v. U.S. Fish & Wildlife Serv.*, 189 F. Supp. 3d 1, 5-6 (D.D.C. 2016) (noting that an agency on remand must "make good on its promise" to engage in a "consideration of alternatives" and take a "hard look" at the action in question).  In short, Vanda supports FDA's wish to address the "issues Vanda noted in its Complaint," Dkt. 6-1 at 2—which FDA largely concedes—so long as FDA does, in fact, address those issues on remand.

However, while Vanda does not object to FDA's request for a voluntary remand and stay of the proceedings—assuming FDA engages in subsequent review consistent with its obligations under the APA—Vanda strongly objects to FDA's request for a remand without vacatur that would allow the Clinical Hold to remain in place for 75 days.  The Clinical Hold has no valid legal basis, and FDA has not met its burden to establish that remand without vacatur is warranted. Accordingly, FDA's request for remand without vacatur should be denied, and the Clinical Hold vacated with immediate effect based on its fundamental deficiencies.  If the Court determines it is appropriate to issue a stay of the vacatur, such a stay should be no longer than 30 days, which is the time period FDA would normally have to issue a clinical hold on a newly submitted investigational new drug application ("IND").

FDA has had ample opportunity to address these issues, yet failed for months to respond to Vanda's requests to explain its scientific rationale for requiring a nine-month chronic toxicity study before allowing Vanda to continue to treat patients with tradipitant for longer than 12 weeks. FDA should not be allowed to keep in place a legally deficient hold while it reassesses the matter, particularly given that FDA was *required* to put forward a legally sound justification *before* instituting the Clinical Hold.  Should FDA determine upon remand that a subsequent clinical hold

is justified, it may only impose such a hold, pursuant to its delegated authority under the Federal Food, Drug, and Cosmetic Act ("FDCA"), if it determines that tradipitant represents "an unreasonable risk to the safety of the persons" who are the subjects of the clinical investigations, or that the hold is justified under a properly promulgated regulation.  21 U.S.C. § 355(i)(3)(B)(i), (ii).  Any other basis, including continued reliance on a non-binding guidance document as imposing legal obligations on Vanda—whether that reliance is explicit or implicit—would be as unlawful as the current Clinical Hold.

Based on the motion to remand, and the lack of detail FDA has given on *how* it plans to reevaluate the scientific data and other arguments presented by Vanda, it is uncertain whether FDA intends to conduct a genuine reevaluation, or has already made up its mind and instead intends merely to rewrite the letter imposing the Clinical Hold in an effort to obfuscate the violations of the APA noted by Vanda in its Complaint and implicitly conceded by FDA.  *Compare* Dkt. 6-1 at 6 ("On remand, FDA will re-evaluate those scientific arguments and provide a full written explanation of the agency's analysis and **ultimate position**") *with id.* ("On remand, FDA will review and clarify the regulatory basis **for its decision**") (emphases added).  To the extent FDA genuinely intends to reevaluate the record, it would be inappropriate to keep the Clinical Hold in effect, as FDA would not have yet determined one way or another, under the proper standards, that a hold is justified in this case.  To the extent FDA is instead merely stalling in an attempt to make superficial changes to a legally deficient hold—in effect "putting lipstick on a pig"—the Court should not countenance such conduct, as a subsequent hold that was superficially distinct from the Clinical Hold but based on the same unlawful reliance on a non-binding guidance document would be no more defensible under the APA.  Either way, while remand to FDA is the right course of action, remanding without vacatur and keeping in effect an unlawful hold is not.

Vanda understands that, if FDA is ultimately able to articulate a valid basis for a clinical hold, consistent with the FDCA, it would be entitled to impose that hold.  FDA cannot, however, impose a hold if there is no valid or lawful basis for it.  As discussed below, Vanda does not believe FDA can ever articulate such a basis with respect to tradipitant, even upon further evaluation and development of a more robust administrative record.  The scientific evidence simply does not support the imposition of the hold, and there is no binding regulation requiring 9-month non-rodent toxicity studies before a drug can be studied in humans beyond 12 weeks.  At this point, however, it is sufficient to note that the Court should not reward FDA for its imposition of a legally deficient hold by allowing that hold to continue in place while FDA does the work it was statutorily required to do *before* imposing a hold.  FDA bears the burden to establish that it is entitled to a remand without vacatur.  FDA has not met that burden.

## BACKGROUND[1]

Vanda is a specialty pharmaceutical company focused on the development and commercialization of novel therapies to address high priority unmet medical needs.  Dkt. 1 at ¶ 2.  Over the past several years, Vanda has been studying tradipitant to treat the symptoms of gastroparesis, a serious chronic digestive disorder that causes symptoms including unrelenting nausea, vomiting, early satiety, abnormal fullness after meals, and abdominal pain.  Gastroparesis

---

[1] Defendants acknowledged in their motion that, at this stage, it is appropriate to assume "certain allegations in Vanda's Complaint" for resolution "of this motion."  Dkt. 6-1 at 3 n.1.  Had Defendants wished to contest Vanda's factual assertions, it was incumbent on FDA to first produce the administrative record, which it has not done.  *See* D.D.C. Rule 7(n)(1) (explaining that the administrative record must be filed prior to or simultaneously with an answer or any dispositive motion).

can lead to frequent and prolonged hospitalization and serious medical interventions, including gastric surgery and tube or intravenous feeding, and is associated with high morbidity.[2]  *Id.* ¶ 4.

Tradipitant is not yet approved for any indication in the United States, but has been studied extensively in both animals and humans.  *Id.* ¶¶ 81, 82.  The non-clinical (*i.e.*, animal) studies have been extensive, both in terms of the number of animal subjects and the number of studies, and include: a single-dose study in rats; a thirteen week repeat-dose study in mice; one-, three-, and six-month repeat-dose studies in rats; one- and three-month repeat-dose studies in dogs; a fertility and embryo-fetal development study in rats; an embryo-fetal development study in rabbits; and *in vitro* and *in vivo* genetic tests.  *Id.* ¶ 82.  The clinical (*i.e.*, human) studies include numerous Phase 1 and Phase 2 studies involving approximately 600 humans, including: one for the treatment of irritable bowel syndrome; one for treatment of social anxiety disorder; two for the treatment of alcohol cravings and dependence; and one for the treatment of chronic pruritus in patients with atopic dermatitis.  *Id.* ¶¶ 3, 84.  None of these studies identified significant clinically relevant safety concerns, and they demonstrated that tradipitant (like other similar products) is safe and well-tolerated in animals.  *Id.* ¶¶ 3, 104.

On August 17, 2016, Vanda submitted to FDA its original protocol for Study VP-VLY-686-2301 ("Study 2301"), a multicenter, randomized, double-blind placebo-controlled study of subjects diagnosed with gastroparesis.  *Id.* ¶ 85.  On April 10, 2018, Vanda submitted a protocol amendment, Protocol Amendment #6, to its IND to add a 52-week, open-label extension period.  *Id.* ¶87.  The submission contained materials, including a survey of 1,423 adults diagnosed with

---

[2] Dkt. 1 at ¶¶ 1, 4; *see also* Vaibhav Wadhwa et al., *Healthcare Utilization and Costs Associated with Gastroparesis*, 24 World Journal of Gastroenterology 4428-4436 (2017); Emad Qayed, Mayssan Muftah, *Frequency of Hospital Readmission and Care Fragmentation in Gastroparesis: A Nationwide Analysis*, 9 World Journal of Gastrointestinal Endoscsopy 200-209 (2018).

gastroparesis and a letter from a patient enrolled in Study 2301, highlighting the challenges of living with gastroparesis and the significant benefits tradipitant had provided to date. *Id.* ¶88. On May 14, 2018, Vanda informed FDA Senior Regulatory Project Manager Maureen Dewey in a teleconference that it had completed both a three-month canine chronic toxicity study and a six-month rat chronic toxicity study of tradipitant, both of which supported tradipitant's safety for human use. *Id.* ¶89.

On a second teleconference with FDA that took place on May 15, 2018, Dr. Lisa Soule, Associate Director for FDA's Division of Gastroenterology and Inborn Error Products, informed Vanda for the first time that FDA would require an additional nine-month, non-rodent toxicity study before FDA would permit Vanda to conduct human dosing on tradipitant for more than three months. *Id.* ¶ 90. As the basis for its demand, FDA cited only the purportedly non-binding guidance document, Guidance for Industry, M3(R2) Nonclinical Safety Studies for the Conduct of Human Clinical Trials and Marketing Authorization for Pharmaceuticals (Jan. 2010) (the "ICH Guidance"), which had been developed by the international, non-governmental organization the International Conference on Harmonisation of Technical Requirements for Pharmaceuticals for Human Use ("ICH") and then adopted by FDA as its own guidance document. *Id.* ¶ 8. The ICH Guidance recommends such a study before human dosing occurs for longer than three months. *Id.* ¶ 10. FDA described this ICH Guidance recommendation as a "requirement," and insisted that Vanda withdraw Protocol Amendment #6 or face a clinical hold. *Id.* ¶ 90. Out of concern that the entirety of Study 2301, including the four-week double-blind evaluation phase of the study, would be placed on clinical hold, Vanda submitted an amended protocol limiting the open label extension period of Study 2301 to eight weeks (meaning, when combined with the four-week initial period, a total of 12 weeks, consistent with the ICH Guidance). *Id.* ¶ 92. FDA accepted this amendment

by letter dated May 24, 2018, and again stated that FDA would consider imposing a clinical hold should Vanda seek to extend Study 2301 past three months without conducting the nine-month, non-rodent toxicity study.  *Id.* ¶ 93.

In consultation with outside FDA counsel, Vanda submitted a Formal Dispute Resolution Request ("FDRR") on August 1, 2018 to challenge FDA's decision.  *Id.* ¶ 94-95.  The FDRR described tradipitant's well-supported safety profile, summarized the studies of tradipitant to date, explained that the scientific community and the Environmental Protection Agency ("EPA") have both recognized that nine-month animal studies are unlikely to identify clinically relevant adverse health effects not seen in shorter studies, and asserted that both Vanda and FDA have a moral imperative to limit unnecessary studies requiring the death of animal participants.  *Id.* ¶ 95.  On August 16, 2018, FDA denied the FDRR, asserting that a request for formal dispute resolution was not appropriate "at this time" because a protocol for a clinical trial exceeding three months in duration "has not been submitted to [Vanda's] application."  *Id.* ¶ 96.  In other words, notwithstanding the fact that Vanda had submitted a protocol amendment in April 2018 and only withdrew it at FDA's suggestion—in order to avoid the risk of a hold imposed on the four-week double-blinded efficacy portion of the protocol—FDA then relied upon this withdrawal as justification to frustrate Vanda's efforts to obtain FDA's meaningful engagement with Vanda's scientific evidence on this issue.  *Id.* ¶ 11.

On September 26, 2018, Vanda submitted a new clinical study protocol, Study VP-VLY-686-2302 ("Study 2302"), proposing a twelve-month open-label extension study for patients who complete Study 2301.  *Id.* ¶ 97.  Vanda was legally permitted to move forward immediately once it had submitted the protocol to FDA, as it had already obtained approval to initiate the study from an Investigational Review Board ("IRB").  *Id.* ¶ 98.  Because by mid-December FDA had not

expressed any concerns or implemented a hold, and believing FDA had reconsidered its prior position, Vanda on December 11, 2018 submitted a protocol amendment to add a 12-month open label extension to Study 2301.  *Id.* ¶ 101.

On December 19, 2018, nearly three months after Vanda had submitted its Study 2302 protocol, FDA informed Vanda during a teleconference (the "Clinical Hold Call") that it had imposed the Clinical Hold on both the proposed amendment to Study 2301 and on Study 2302. *Id.* ¶ 111.  FDA's delay in acting (and the extent of its delay) is significant.  Vanda was entitled to move forward with Study 2302 immediately, and FDA believed it had done so, yet FDA took nearly three months to act.  And when it came, FDA's clinical hold was imposed long after the 7-day safety screening period and 30-day safety review period recommended under FDA's Manual of Policies and Procedures ("MAPP") for an IND protocol amendment.  *Id.* ¶¶ 98-99.  This delay reflects FDA's lack of genuine safety concern regarding Vanda's specific studies, which was confirmed during the Clinical Hold Call, in which Dr. Soule stated that ***FDA had no safety concerns about the clinical data or studies Vanda had presented***.  *Id.*  Dr. Soule explained that instead, FDA's sole concern was that Vanda had not completed the nine-month, non-rodent toxicity study.  *Id.*  Dr. Soule stated that this was a "requirement imposed by the ICH Guidance." *Id.*

FDA followed the Clinical Hold Call with a formal letter dated December 21, 2018 (the "Clinical Hold Letter").  *Id.* ¶ 112.  The Clinical Hold Letter did ***not*** rely on any determination by FDA that tradipitant represents "an unreasonable risk to the safety of the persons" who are the subjects of the proposed clinical investigations.  *Id.* ¶ 113; 21 U.S.C. § 355(i)(3)(B)(i).  Instead, the Clinical Hold Letter stated that the reason for the Clinical Hold was that "non-rodent toxicity studies of 9-months duration ***are required*** for the conduct of [Vanda's] proposed clinical

investigations of 52 weeks (12 months) duration, *per* the ICH [Guidance.]"  (emphasis added).  *Id.* The Clinical Hold Letter further explained that "[t]he rationale to support the ICH requirement for the nine-month duration for non-rodent toxicity studies is summarized in the following publication: DeGeorge JJ, Meyers LL, Takahashi M, Contreras JF.  *The duration of non-rodent toxicity studies for pharmaceuticals.  Toxicol Sci 1999; 49: 143-155*, which noted that later toxicological findings have been observed in the absence of earlier toxicological findings."  *Id.* ¶ 113.  Nor did the Clinical Hold Letter rely on a basis established by regulation.   Although the Clinical Hold Letter cited 21 C.F.R. § 312.42(b)(2)(i), which authorizes FDA to impose a hold when an IND does not contain sufficient information to assess the risks to subjects of proposed studies, the letter went on to assert that the basis for this conclusion was Vanda's failure to comply with a non-binding guidance document.  Dkt. 1 at ¶ 112.  Specifically, the Clinical Hold Letter states that Vanda did "not have adequate nonclinical safety data to support clinical trials beyond 3 months" because it had not conducted the nine-month study required "per ICH M3(R2) guidance." *Id.* ¶¶ 116, 140.  Lastly, the Clinical Hold Letter rejected Vanda's proposal to conduct a nine-month study that would not require animal sacrifice, claiming without support that such a study "would not provide meaningful toxicologic information," and stated that until Vanda "submit[ted] satisfactory results from a chronic toxicology study of 9 months duration in a non-rodent species, per ICH M3(R2) guidance," Vanda could "not legally conduct the identified clinical studies under this IND, except as specifically described above."  *Id.* ¶¶ 114, 116, 130.

On December 21, 2018, the same day it received the Clinical Hold Letter, Vanda sought reconsideration of the Clinical Hold from Janet Woodcock, M.D., the Director of CDER, and Defendant Dr. Gottlieb.  *Id.* ¶ 117.  In that December 21 communication, Vanda explained tradipitant's well-documented safety profile and the company's extensive efforts seeking to

discuss the purported nine-month safety requirement with FDA, which FDA had repeatedly frustrated.  Vanda also reiterated its view that it was inappropriate for FDA to impose the Clinical Hold in reliance on the ICH Guidance.  *Id.* ¶¶ 117-18.

On January 4, 2019, Dr. Peter Stein, Director of CDER's Office of New Drugs, communicated by telephone with Vanda's Chief Executive Officer about the correspondence.  *Id.* ¶ 119.  Dr. Stein stated that he had conferred with Dr. Woodcock about Vanda's concerns.  *Id.*  Dr. Stein stated that he appreciated Vanda's thoughtful approach to challenging the nine-month study "requirement."  *Id.*  Dr. Stein also confirmed that FDA had considered granting Vanda a waiver from the ICH Guidance "requirement," but had determined not to do so because it would imply FDA was changing its "policy" with respect to the ICH Guidance.  *Id.*  Dr. Stein confirmed that the Clinical Hold would stand as the agency's final decision.  *Id.*

Because FDA had made it readily apparent throughout its communications with Vanda that FDA would not relent on its position that the ICH Guidance imposed binding requirements, Vanda was left with only one option.  *Id.* ¶¶ 120-21.  On February 5, 2019, Vanda filed suit in this Court seeking to set aside the Clinical Hold and obtain declaratory relief that FDA's actions are in violation of the APA.

## ARGUMENT

Vanda does not oppose FDA's request to remand this matter for reevaluation, though observes that, upon remand, FDA must ensure that its reevaluation is genuine and expedient, and therefore in line with its obligations under the APA.  However, Vanda contests FDA's effort to keep in effect a legally deficient Clinical Hold during the pendency of FDA's reevaluation, especially since Vanda does not believe the hold is likely to be curable, even upon further reassessment and the development of a more robust administrative record.  The Clinical Hold, as

FDA effectively concedes, is invalid.  This Court should not allow an unlawful agency order to remain in effect for any period of time, let alone allow FDA even more time to further delay as it "considers" the issues that it was required to assess ***before*** it issued the Clinical Hold in the first place.  Immediate vacatur is particularly appropriate here, as the Clinical Hold blocks Vanda from continuing to study tradipitant for the treatment of gastroparesis, a severe disease for which there is a significant unmet medical need and for which no new drugs have been approved by FDA in 40 years.  While Vanda supports FDA's motion to remand for further agency consideration consistent with the APA, Vanda opposes FDA's request for remand without vacatur.

## I.   Vanda Does Not Oppose Voluntary Remand, But Opposes the Request for Remand Without Vacatur

In its motion, FDA asserts that "[v]oluntary remand serves judicial economy by affording an agency an opportunity 'to cure its own potential mistake rather than needlessly wasting the Court's and the parties' resources.'"  Dkt. 6-1 at 5 (quoting *Sierra Club v. Van Antwerp*, 560 F. Supp. 2d 21, 24-25 (D.D.C. 2008)).  Vanda agrees.  FDA also concedes that it may impose a clinical hold on only one of two grounds: "if FDA determines that the investigational drug represents an unreasonable risk to the safety of human subjects, or that a clinical hold should be issued for other reasons specified by FDA regulations."  Dkt. 6-1 at 3.  Vanda agrees.  Here, as FDA acknowledges, the record does not reflect "analysis of and response to Vanda's scientific submissions about the necessity of an additional animal toxicology study," and the Clinical Hold Letter identifies the ICH Guidance "as the source of some 'requirements'"—purportedly to satisfy the "reason specified by FDA regulations" rationale for imposing a clinical hold—despite the ICH Guidance being simply a "non-binding policy statement" that was never adopted as a formal regulation.  Dkt. 6-1 at 6.  Accordingly, as FDA suggests and Vanda explained in its Complaint,

the Clinical Hold does not conform to either of the two bases that provide the *only* grounds under the Federal Food, Drug, and Cosmetic Act ("FDCA") for imposing a clinical hold.

First, the Clinical Hold Letter does not identify a particular "unreasonable risk to the safety of the persons who are subjects of the clinical investigation," nor does it rely upon another reason "as the Secretary . . . by regulation establish[ed]." 21 U.S.C. § 355(i)(3)(B)(i). Second, while FDA *referenced* a regulation in the Clinical Hold Letter, the regulation FDA cited therein does not specify that an IND lacks 'sufficient information . . . to assess the risks to subjects of the proposed studies" if the nine-month, non-rodent toxicity study recommended by the ICH Guidance has not been conducted. 21 C.F.R. § 312.412(b)(1)(iv). Instead, the regulation specifies that, with respect to pharmacology and toxicology information, the "kind, duration, and scope of animal and other tests required varies with the duration and nature of the proposed clinical investigations," meaning that the studies and data necessary to show "that it is reasonably safe to conduct the proposed clinical investigations," vary on a case-by-case basis. *Id.* § 312.23(a)(8). Furthermore, FDA advises that "[g]uidance documents are available from FDA that describe ways in which these requirements "**may** be met," but explicitly states that guidance documents do *not* set forth mandatory criteria. *Id.* (emphasis added). In short, regulations that require FDA to conduct case-by-case assessments do not permit FDA to point to recommendations from non-binding, sub-regulatory guidance documents as the necessary "regulatory" basis for the Clinical Hold.

FDA has implicitly (and to some extent explicitly) acknowledged these flaws, and has effectively conceded that the Clinical Hold improperly relied on the ICH Guidance as a binding regulatory requirement. *See* Dkt. 6-1 at 2 (acknowledging the need to address the "issues Vanda noted in its Complaint," including "the treatment of a guidance document as a binding rule"). For this reason, the government knows that the Clinical Hold cannot be defended in court, and so seeks

to remand to the agency instead.  Vanda agrees with FDA that it is more efficient for FDA to spend its time "addressing the issues the agency has acknowledged" rather than litigating.  Dkt. 6-1 at 7.  Under the APA, a challenged agency action must be set aside where it is "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (C), (D).  Here, the Clinical Hold is plainly neither "rational [nor] consistent with the authority delegated to it by Congress," *Water Quality Ins. Syndicate v. United States*, 225 F. Supp. 3d 41, 63 (D.D.C. 2016) (quotation marks and citation omitted), and, in relying on the ICH Guidance as binding, FDA failed to assess properly the costs and benefits of its action.  *Weyerhaeuser v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 371 (2018).  Because the current Clinical Hold would fail to survive judicial review (for the reasons FDA acknowledges), and because it is unlikely that on the current record FDA will be able to identify either tradipitant-specific safety concerns that would be mitigated by a 9-month non-rodent toxicity study or any regulatory requirement mandating such a study that would cure the hold, there is no reason to keep the unjustified Clinical Hold in place.

To be clear, on remand, FDA should not be permitted simply to obfuscate the actual, legally inadequate basis for its challenged decision (*i.e.*, treatment of the ICH Guidance as a binding regulatory requirement).  A new hold that was also based on the ICH Guidance, but more artfully worded to obscure this reliance, would be just as unlawful.  Vanda is concerned that FDA's request to maintain the Clinical Hold pending its review suggests that FDA may approach its further review with a pre-determined outcome in mind, looking to justify its prior decision in more defensible terms.  Vanda recognizes, however, that at other points, FDA appears to acknowledge that it genuinely has further work to do in analyzing Vanda's scientific data before coming to a

new assessment.  For example, FDA explains that it will be required "[o]n remand, . . . [to] re-evaluate those scientific arguments and provide a full written explanation of the agency's analysis and ultimate position."  Dkt. 6-1 at 1, 6.  If FDA is genuinely committed to grappling with the specific science, circumstances, and safety profile of tradipitant on remand, as the record suggests it has not yet done, the ultimate outcome of its reassessment remains unknown, and there is, therefore, no basis for a hold.  In either case, the unlawful Clinical Hold should not remain in effect.

FDA may ultimately reconsider its position, and it is theoretically possible that it may find a way to impose a clinical hold under appropriate authorities.  But, in the interim, the Clinical Hold challenged in Vanda's Complaint is unlawful.  It would be "quite odd for this Court to find the [Clinical Hold] invalid and yet permit the [Clinical Hold], with [its] substantial deficiencies, nonetheless to go into effect[.]" *Am. Petroleum Inst. v. SEC*, 953 F. Supp. 2d 5, 24 (D.D.C. 2013).  Because the Clinical Hold was issued in violation of the APA, it must be set aside.

## II.     Remand Without Vacatur While Maintaining the Clinical Hold is Not Justified in This Case

As a general rule, "'[w]hen a reviewing court determines that agency [actions] are unlawful, the ordinary result is that the [actions] are vacated.'" *NAACP v. Trump*, 298 F. Supp. 3d 209, 243 (D.C. Cir. 2018) (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989)).  In other words, "unsupported agency action normally warrants vacatur." *Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F. 3d 1136, 1151 (D.C. Cir. 2005).  Where, as here, the "deficiencies concern [] the flaws in the Secretary's decision-making process," the "appropriate remedy . . . is to vacate the Secretary's decision and remand . . . for further proceedings consistent with" the Court's opinion and applicable law. *Fuller v. Winter*, 538 F. Supp. 2d 179, 193 (D.D.C. 2008).

The government instead seeks remand *without* vacatur, a step taken in certain cases that has drawn considerable criticism as fundamentally inconsistent with the APA.  *See, e.g.*, *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 757 (D.C. Cir. 2002) (Sentelle, J., dissenting) (explaining that "'[o]nce a reviewing court determines that the agency has not adequately explained its decision, the Administrative Procedure Act requires the court—in the absence of any contrary statute—to vacate the agency's action'" as "the APA states as much 'in the clearest possible terms'") (quoting *Checkosky v. SEC*, 23 F.3d 452, 491 (D.C. Cir. 1994) (Randolph, J., concurring)).  Even assuming remand without vacatur is ever appropriate, it is at most an *exception* to the general rule, and therefore is, and should be, applied only in unusual circumstances.  *See* Stephanie J. Tatham, The Unusual Remedy of Remand without Vacatur, Final Report for the Administrative Conference of the United States 29 (Jan. 3, 2014) (explaining that the D.C. Circuit deploys this remedy only a few times per year, usually in cases involving the EPA, and other circuits that do apply this remedy do so very "infrequently").

Accordingly, even presuming the remedy might be available in *some* cases, it is the government's burden to prove the remedy is appropriate in *this* case.  *See Shands Jacksonville Med. Ctr. v. Burwell*, 139 F Supp. 3d 240, 268 (D.D.C. 2015) (noting "the Secretary bears the burden of demonstrating that the 'normal remedy' of vacatur does not apply") (quoting *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014)).  FDA has failed to meet that burden.  As FDA notes, in determining whether to apply this alternative, courts consider two factors: "(1) 'the seriousness of the order's deficiencies (and thus the extent of doubt about whether the agency chose correctly),' and (2) 'the disruptive consequences of an interim change that may itself be changed.'" *Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 44 (D.D.C. 2013) (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993).

Here, FDA bears the burden of proving that both factors warrant the unusual application of remand without vacatur.  *See Shands Jacksonville Med. Ctr.*, 139 F. Supp. 3d at 268.  FDA has failed to meet that burden, as both factors counsel *against* this unusual form of relief.

### A.   Remand *With* Vacatur is Appropriate Because the Clinical Hold's Defects are Serious and Not Easily Curable

With respect to the first factor, remand without vacatur would only be "appropriate [if] 'there is at least a serious possibility that the [agency] will be able to substantiate its decision' given an opportunity to do so."  *Radio-Television News Dirs. Ass'n v. FCC*, 184 F.3d 872, 888 (D.C. Cir. 1999) (quoting *Allied-Signal, Inc.*, 988 F.2d at 151); *see also Ameren Servs. Co. v. Fed. Energy Regulatory Comm'n*, 880 F.3d 571, 585 (D.C. Cir. 2018) (remanding *and vacating* a Federal Energy Regulatory Commission ("FERC") order when it was "at least uncertain that FERC can reach the same result after addressing the deficiencies noted in this opinion").  Here, the Clinical Hold violates the APA, and its defects are not easily curable.  In order to satisfy its burden under the FDCA, FDA must show either an "unreasonable risk to the safety of the persons who are the subjects of the clinical investigation," 21 U.S.C. § 355(i)(3)(B)(i), or it must alternatively demonstrate that, based on the specific factors relevant to tradipitant, a nine-month, non-rodent toxicity study is necessary to show "that it is reasonably safe to conduct the proposed clinical investigations."  21 C.F.R. § 312.23(a)(8); *see also id.* § 312.412(b)(1)(iv).  In either case, FDA bears the burden of showing a specific risk of harm and demonstrating that the additional study is likely to identify new, clinically relevant information likely to alleviate the risk of harm.  FDA is highly unlikely to be able to do so, which is *why* it instead chose to rely improperly upon the ICH Guidance as itself imposing a binding regulatory requirement.

Vanda has been asking FDA for a specific scientific analysis of tradipitant since May 2018, when FDA first indicated that a 52-week open-label study in humans could not take place without

first doing a nine-month, non-rodent toxicity study.  For the past nine months, FDA has done no more than point repeatedly to the ICH Guidance as a "requirement," because it does not have any other justification on which it can rely.  Current science does not support the usefulness of such a study in identifying new clinically relevant toxicities beyond those identified in shorter-term studies, which is precisely why the EPA abandoned its requirement for long-term canine toxicity studies in the pesticide approval process in 2017, and identified that, with respect to drugs, there appear to be few examples in the literature where new findings from nine-month, non-rodent toxicity studies provided actionable safety information.  Dkt. 1 at ¶¶ 73, 75.  Extensive, additional studies support EPA's conclusion.  *Id.* ¶ 74 n.11.  EPA now requires such studies only where there is specific evidence "that a pesticide chemical is highly bioaccumulating and is eliminated so slowly that it does not achieve a steady state or sufficient tissue concentrations to elicit an effect during a 90-day study."  40 C.F.R. § 158.500(e)(36).

Here, by contrast, there is no specific evidence that a longer-term non-rodent animal study with tradipitant would yield additional clinically meaningful data.  Furthermore, as FDA has acknowledged, FDA has not expressed concern about any tradipitant-specific safety issue because the tradipitant safety data in the record does not suggest any concern or risk that would be clinically relevant in humans.  Dkt. 1 at ¶¶ 82, 84, 102-104, 111.  Accordingly, it is highly unlikely that, given even as long as an additional 75 days, FDA would be able to identify a tradipitant-specific safety concern that a long-term dog toxicity study would shed further light on, or rebut the growing body of scientific research that is demonstrating the uselessness of the nine-month, non-rodent toxicity studies recommended by the ICH Guidance.[3]  That is particularly true given that FDA has

---

[3] As noted in Plaintiff's Complaint, even the recommendation contained in the ICH Guidance was (1) subject to exception; and (2) based on a political compromise rather than a scientifically sound rationale.  Dkt. 1 at ¶¶ 58, 64.

already acknowledged that tradipitant can be administered safely to patients for up to three months, and accordingly the burden will be on FDA to show that the additional non-rodent animal study would be necessary to rule out new clinically relevant safety concerns that are likely to be discovered after three, but before the end of nine, months of use.

Furthermore, while FDA references vague and unspecified "concerns about safety risks to humans," Mem. in in Supp. of Mot. to Remand at 4, together with a general invocation of judicial deference to support its request for remand without vacatur, Dkt. 6-1 at 8, no deference is warranted here.   While an evaluation of "scientific data" is within FDA's "area of expertise," *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1320 (D.C. Cir. 1998), thus far FDA has not engaged in, or articulated the results of, any such evaluation.   Instead, FDA has simply cited to the ICH Guidance as a binding requirement.   While a future, proper scientific determination could in theory be subject to deference, FDA may not invoke the theoretical possibility of deference to a different type of action to justify keeping in place a legally deficient Clinical Hold that is entitled to zero deference.

In order to determine whether an agency interpretation is entitled to deference, courts examine "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).   If Congress has done so, "that is the end of the matter" and courts must enforce the "unambiguously expressed intent of Congress." *Id.* at 842-43.   An agency may not adopt an interpretation that has the "untoward effect of blue penciling out express conditional language in the statute" that was "intended to have 'restrictive significance,'" as it "would be illegitimate for the judiciary, [even] in pursuit of some overriding Congressional goal . . . to tear asunder a specific provision which Congress saw fit to enact." *Nat'l Res. Def. Council, Inc. v. EPA*, 822 F.2d 104, 113 (D.C. Cir. 1987) (quoting *Reiter v. Sonotone*

*Corp.*, 442 U.S. 330, 339 (1979)).  Here, *as FDA acknowledges*, Congress has plainly and unambiguously given FDA only two options to impose a clinical hold: FDA must either make a determination that "the drug involved represents an unreasonable risk to the safety of the persons who are the subject of the clinical investigation," or FDA must impose the clinical hold for a reason the Secretary has "by regulation establish[ed]."  21 U.S.C. § 355(i)(3)(B)(i), (ii).  The Supreme Court has made clear that the agency can claim deference under such a statute only if the agency "received congressional authority to determine the particular matter at issue in the particular manner adopted." *Arlington v. FCC*, 569 U.S. 290, 306 (2013).  Here, FDA did not proceed under either statutorily prescribed manner.  By the plain terms of the FDCA, FDA may not lawfully impose a clinical hold for a third reason—*i.e.*, based on failure to follow the ICH Guidance—and FDA's attempt to do so through the Clinical Hold is entitled to no deference.

Furthermore, and relatedly, no deference is warranted where an agency interprets its own regulation if that regulation is unambiguous, as it is here. *See Auer v. Robbins*, 519 U.S. 452, 461-62 (1997) (agency not entitled to deference in interpretation of its regulation where such interpretation is "plainly erroneous or inconsistent with the regulation") (citation and quotation marks omitted); *see also Pfizer, Inc. v. Heckler*, 735 F.2d 1502, 1509 (D.C. Cir. 1984) ("Deference to agency interpretations is not in order if the rule's meaning is clear on its face."); *Exportal Ltda. v. United States*, 902 F.2d 45, 50 (D.C. Cir. 1990) (same).  Here, neither the FDCA nor the FDA's implementing regulations authorize FDA to impose a clinical hold on the basis of a sponsor's decision not to follow the recommendations contained in a non-binding guidance document.  FDA is therefore entitled to no deference under *Auer*.[4]

---

[4] *Auer* deference is currently under review, and could potentially be abandoned.  *See Kisor v. Wilkie*, (No. 18-15) 139 S. Ct. 657 (2018).  Even assuming *Auer* deference is generally available, however, it would not apply here because the regulations at issue are unambiguous.

Nor does FDA's reliance on the ICH Guidance merit deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). An agency's interpretation is entitled to *Skidmore* deference only in proportion with "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade, if lacking power to control." *Id.* at 140. Here, FDA's actions, as the Clinical Hold Letter reveals, do not demonstrate any consideration—let alone thorough consideration—of the scientific record. To the contrary, FDA has thus far ignored the scientific evidence presented by Vanda and invoked the ICH Guidance as gospel. Unconsidered reliance on the ICH Guidance—particularly given that the ICH Guidance has not been adopted through notice-and-comment rulemaking—is not entitled to *Skidmore* deference. *Cf. Fogo de Chao (Holdings) Inc. v. Dep't of Homeland Sec.*, 769 F.3d 1127, 1141 (D.C. Cir. 2014) (concluding that the agency at issue "failed to ground its newly adopted [interpretation] . . . in [the] statutory text, statutory purpose, regulatory guidance, or reasoned analysis" and that such interpretation "accordingly lacks the power to persuade under *Skidmore*").

In short, FDA is entitled to no deference on the current, legally invalid Clinical Hold, and the difficulty FDA will have in curing the underlying defect in the Clinical Hold mitigates against remand without vacatur. *Cf. Comcast Corp. v. FCC*, 579 F.3d 1, 8-9 (D.C. Cir. 2009) (asserting "no trouble concluding" that *vacatur* is appropriate where the agency's "dereliction" through its failure to "respond[] to empirical data or to an argument inconsistent with its conclusion . . . is particularly egregious").

### B.   Remand *With* Vacatur is Appropriate Because Tradipitant Poses No Unpredictable or Irreversible Consequences to Human Participants

With respect to the second factor, remand without vacatur is not appropriate in this case because there will be no "unpredictable and irreversible consequences" to human participants if

the legally defective Clinical Hold is vacated. *Am. Forest Res. Council*, 946 F. Supp. 2d at 46.  As noted in Vanda's Complaint, multiple non-clinical studies have been conducted with tradipitant, first by Eli Lilly and then by Vanda.  Dkt. 1 at ¶ 82.  Furthermore, tradipitant has also been administered to human patients in multiple clinical studies, including one study that tested tradipitant's efficacy in reducing alcohol cravings or consumption over the course of 12 weeks. *Id.* ¶ 84.  None of these studies has identified clinically relevant safety concerns that would make proceeding with further human study of tradipitant risky to study subjects.  In other words, this is not a case where there are genuine safety concerns that have already been established that might warrant maintaining the Clinical Hold while FDA fixes a minor, procedural error.  Instead, there is no genuine safety concern justifying FDA's unlawful imposition of the Clinical Hold.  FDA did not do so because it had no such particular safety concerns, a fact *acknowledged by FDA*.  In particular, on December 19, 2018, during the Clinical Hold Call, Dr. Soule *explicitly* stated that FDA had *no* safety concerns about the clinical data or studies Vanda had presented.  *Id.* ¶ 111. This acknowledgment is consistent with FDA's actions, which did not involve the imposition of an immediate hold to prevent initiation of the proposed study.  For instance, if FDA had significant safety concerns, it presumably would have followed (or at least come close to) the process and 7- and 30-day timelines set forth in its MAPP for identifying and taking action to impose a timely clinical hold with respect to new protocols and protocol amendments submitted to INDs that are already in effect.  *See* Dkt. 1 at ¶¶ 98-99.[5]  Instead, after submitting Study 2302 on September 26,

---

[5] While the recommended timelines are not inflexible, the MAPP makes clear that "concerns that affect subject safety should be evaluated and communicated to the sponsor as soon as possible." *See* CDER Manual of Policies and Procedures (MAPP) 6030.9, *Good Review Practice: Good Review Management Principles and Practices for Effective IND Development and Review* (effective date Apr. 29, 2013) at 14, *available at* https://www.fda.gov/downloads/AboutFDA/CentersOffices/OfficeofMedicalProductsandTobacc

Vanda did not hear any objection from FDA until-mid December (nearly 90 days later).  In the interim, FDA assumed patients were being treated as part of the study and, in November 2018, asked Vanda how many patients were being treated.  *Id.* ¶ 100.  It is not credible to suppose that FDA would have severe concern of "unpredictable and irreversible consequences," *Am. Forest Res. Council*, 946 F. Supp. 2d at 46, given its course of conduct, and given its representation that it has not yet arrived at a final conclusion but instead seeks to "reevaluate the issues identified [by Vanda] and provide a thorough explanation of its reevaluation" as part of its "collaborative approach with sponsors to clinical trial development."  Dkt. 6-1 at 5, 7.

Here, "in crafting the appropriate remedy, time is of the essence."  *Bauer v. DeVos*, 332 F. Supp. 3d 181, 186 (D.D.C. 2018).  Due to FDA's imposition of the Clinical Hold on two of Vanda's studies of the investigational drug tradipitant, Vanda is unable to continue studying tradipitant in humans beyond three months, and is therefore unable to complete the requisite long-term safety evaluation.  In addition, the patients who were being treated with tradipitant were forced to stop treatment, because the Clinical Hold prohibits Vanda from providing tradipitant to patients for longer than twelve weeks.  These patients suffer from gastroparesis, a serious chronic gastrointestinal disease which plagues its sufferers with unrelenting nausea, vomiting, and abdominal pain, which can lead to hospitalization, surgery, and even the need for feeding by tube or IV, and typically significantly impedes quality of life, including by preventing basic social and occupational functioning.  There is no currently FDA-approved long-term treatment, and both approved and unapproved treatments involve significant irreversible risks, and so patients with very few good alternative treatments wish to continue taking tradipitant but cannot due to the

---

o/CDER/ManualofPoliciesProcedures/UCM349907.pdf.   Notably, the agency gives itself only thirty days to issue a clinical hold even in the case of an entirely new IND, 21 C.F.R. § 312.40(b), suggesting that would have been ample time in the case of Vanda's proposed amendment.

Clinical Hold.  In the absence of vacatur of the Clinical Hold, patients who had been treated with tradipitant and experienced significant symptom relief prior to the cessation of treatment due to the Clinical Hold will continue to suffer serious harm.  In addition, as a specialized pharmaceutical company with relatively few products, competing against numerous entrenched and established competitors, Vanda will be severely and unnecessarily disadvantaged if its ability to study tradipitant in humans for longer than twelve weeks is delayed, because these studies must be conducted in order to seek FDA approval of tradipitant for gastroparesis.  The longer the Clinical Hold remains in effect, the greater the harm to the reputation of Vanda and tradipitant, both of which are unfairly associated with the Clinical Hold and potential safety concerns.

Accordingly, it would be particularly inappropriate here to allow FDA an additional 75 days to stall and maintain the legally deficient Clinical Hold.  Indeed, doing so incentivizes greater delay than necessary.  *See Nat. Res. Def. Council v. EPA*, 489 F.3d 1250, 1262-64 (D.C. Cir. 2007) (Randolph, J., concurring) ("A remand-only disposition is, in effect, an indefinite stay of the effectiveness of the court's decision and agencies naturally treat it as such.").  FDA bears the burden of justifying a remand without immediate vacatur, and it has failed to justify its request for further delay.

Finally, even if FDA had legitimate concerns with immediate vacatur, it would be more appropriate to order vacatur and then stay the effect of that vacatur.  *See Checkosky*, 23 F.3d at 493 n.37 (Randolph, J., concurring) ("If the agency believes that vacating . . . would cause difficulties, it has the option of applying for a stay of the mandate, at which point it may make its arguments regarding irreparable harm and other considerations.  This is the usual and appropriate method of handling such matters . . . "); *see also Columbia Falls Aluminum Co. v. EPA*, 139 F.3d 914, 924 (D.C. Cir. 1998) ("If EPA wishes to promulgate an interim treatment standard, the

Agency may file a motion in this court to delay issuance of this mandate in order to allow it a reasonable time to develop such a standard."). In other words, to the extent that FDA's assertions give the Court pause in immediately vacating the order, the Court's options are not binary. The Court also has the option of ordering vacatur while staying its effect. *Bauer*, 332 F Supp. 3d at 186. Should the Court determine that a stay of vacatur is appropriate, however, a stay of any longer than thirty days would be unwarranted. Even in the case of an entirely new IND application, FDA regulations give FDA only 30 days to impose any clinical hold if the agency wants to prevent the study from going forward. 21 C.F.R. § 312.40(b). Here, FDA has already had many months to consider the issues under dispute. It surely should not have even longer than an *additional* thirty days to complete the review that is required before imposing a clinical hold. A short stay of the vacatur would address FDA's concerns, if the Court is inclined to credit them, allow FDA to address the deficiencies it claims are easily correctable, and "curtail the harm" to Vanda, patients, and the public "that a remand without vacatur would otherwise engender." *Id.*

## CONCLUSION

Vanda agrees with FDA that it is appropriate for FDA to address the "issues Vanda noted in its Complaint, including the allegations about the agency's response to scientific arguments submitted by Vanda and the treatment of a guidance document as a binding rule," and that allowing FDA to do so without burdening the Court's resources is also appropriate. Dkt. 6-1 at 2. Vanda therefore does not oppose FDA's motion to remand. However, as a company committed to sound science and opposed to the unnecessary sacrifice of animals without scientific justification, Vanda strenuously objects to FDA's request for remand *without vacatur* of the unlawful Clinical Hold. The finding that the Clinical Hold was unlawful should be accompanied by immediate vacatur of

the unlawful agency action.  *See Am. Petroleum Inst.*, 953 F. Supp.2d at 24.  Vanda therefore

respectfully requests that this Court vacate the Clinical Hold.

Dated:  February 22, 2019

Respectfully submitted,

 */s/    Douglas Hallward-Driemeier*
Douglas Hallward-Driemeier
(D.C. Bar No. 994052)
Gregory H. Levine (D.C. Bar No. 456055)
Chong S. Park (D.C. Bar No. 463050)
Beth Weinman*
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, D.C. 20006-6807
(202) 508-4600
Douglas.Hallward-
Driemeier@ropesgray.com
Gregory.Levine@ropesgray.com
Beth.Weinman@ropesgray.com

*Attorneys for Plaintiff*

*Not admitted to practice in the District of Columbia; supervised by Ropes & Gray LLP partners
who are members of the District of Columbia Bar.

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of February, 2019, I electronically filed the foregoing Partial Opposition to Defendants' Motion for a Voluntary Remand to the Agency and for a Stay of the Case using the Court's electronic filing system, which will send a notice of electronic filing to all Counsel of Record.


*/s/    Douglas Hallward-Driemeier*

Douglas Hallward-Driemeier

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VANDA PHARMACEUTICALS, INC.,<br><div align="center">Plaintiff,</div><br>v.<br><br>FOOD AND DRUG ADMINISTRATION,<br>SCOTT GOTTLIEB, M.D., and ALEX M.<br>AZAR II,<br><br><div align="center">Defendants.</div> | Civ. No. 1:19-cv-00301-EGS |

**[PROPOSED] ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION FOR A VOLUNTARY REMAND TO THE AGENCY**
**AND FOR A STAY OF THE CASE**

Upon consideration of Defendants' Motion for a Voluntary Remand to the Agency and for

a Stay of the Case, Defendants' Motion is hereby **GRANTED** in part and **DENIED** in part.

It is **ORDERED** that this case be **REMANDED** to the FDA for further consideration in

accordance with this opinion, and with the understanding that FDA will conduct its further review

in accordance with its legal obligations under the Federal Food, Drug, and Cosmetic Act and the

Administrative Procedure Act.

It is further **ORDERED** that the partial clinical hold imposed by FDA is hereby

**VACATED**.


Dated:        February ____, 2019

_____
Hon. John D. Bates
United States District Judge