**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ )<br><br>VANDA PHARMACEUTICALS, INC.,          )<br>                                      )<br>         Plaintiff,                   )<br>                                      )<br>    v.                                )<br>                                      )<br>FOOD AND DRUG ADMINISTRATION,         )<br>et al.,                               )<br>                                      )<br>         Defendants.                  )<br>_____ ) | Civil Action No. 1:19-CV-00301 (JDB) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR A
VOLUNTARY REMAND TO THE AGENCY AND FOR A STAY OF THE CASE**

Vanda Pharmaceuticals, Inc. ("Vanda") agrees with Defendants' request for a voluntary remand of this matter to the U.S. Food and Drug Administration ("FDA"). But the company insists that this Court also vacate the Partial Clinical Hold and allow the company to immediately commence testing its drug on human subjects for longer than three months despite FDA's safety concerns with its proposed clinical trials. Vanda's demand that the Court clear the way for immediately commencing its human clinical trials is legally unfounded and should be rejected.

FDA's Partial Clinical Hold on Vanda's proposed 52-week human clinical trials with tradipitant is currently in effect. It will remain in effect until the agency lifts it or this Court invalidates it. FDA has not "effectively conceded" error, "waved a white flag," sought to put "lipstick on a pig," or made any of the other supposed concessions scattered through Vanda's brief. Should this litigation proceed without remand, FDA's Partial Clinical Hold would continue to bind Vanda unless and until the company prevails.

Vanda's request for vacatur just a few weeks after it filed its lawsuit—as the price of allowing FDA to voluntarily address certain procedural issues Vanda noted in its Complaint—

would turn the regular judicial process on its head.  Vanda has not established it is entitled to vacatur and the Court should not grant vacatur simply because FDA seeks to voluntarily address some of the objections that Vanda itself advanced.

Even if vacating an agency's decision before the Court has made a determination on the merits might sometimes be appropriate, it is not appropriate here.  FDA can and will address Vanda's primary grievances with the Partial Clinical Hold on remand.  (Indeed, FDA already has begun the reevaluation process.)  And the potential harm from permitting a human clinical trial to proceed despite FDA's concerns about the sufficiency of available safety information for tradipitant far outweighs the harm to Vanda from delaying less than three months its ultimate quest to seek FDA approval to sell tradipitant in the American marketplace.

I.    **Vacatur of the Partial Clinical Hold before any judicial finding of invalidity is legally baseless.**

Vacatur is a remedy, not an entitlement.  *See La. Fed. Land Bank Ass'n v. Farm Credit Admin.*, 336 F.3d 1075, 1085 (D.C. Cir. 2003).  After a court determines on the merits a plaintiff's right to relief, "[t]here remains the matter of the proper remedy," which could potentially include vacatur.  *Id.*  But Vanda must prevail on the merits before taking a victory lap.  Here, Vanda's action is in its infancy and the company's entitlement to relief—let alone the nature of that relief— has not even been litigated, much less decided.

Vanda cites a string of cases for the "general rule" that "'[w]hen a reviewing court determines that agency [a]ctions are unlawful, the ordinary result is that the [actions] are vacated.'" Vanda Opp'n, ECF No. 7, at 14 (quoting *NAACP v. Trump*, 298 F. Supp. 3d 209, 243 (D.D.C. 2018)).  True enough.  But Vanda has not achieved the necessary predicate for applying this rule: a judicial determination that an agency's action is unlawful.  *See id.*

Claims brought under the Administrative Procedure Act ("APA") are no exception to the basic judicial process. "[T]he question of remedy," including vacatur, arises only after a court first finds that the agency action was invalid.[1] *NAACP*, 298 F. Supp. 3d at 243; *see, e.g.*, 5 U.S.C. § 706(2)(A) (providing for a court to "set aside agency action . . . *found to be* arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law") (emphasis added); *Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 40, 44 (D.D.C. 2013) (addressing vacatur "[a]fter an agency rule or order *has been found unlawful on the merits*") (emphasis added).

This Court has not, of course, found that the Partial Clinical Hold is invalid under the APA. Nor does the remand motion present that issue to the Court. Defendants still have weeks to respond to the Complaint, to say nothing of produce an administrative record and brief the merits—all steps that precede this Court deciding the merits. In requesting voluntary remand, FDA need not "confess error or impropriety," *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 387 (D.C. Cir. 2017), and the agency has in no way done so. Rather, consistent with the applicable standard, FDA identified "two substantial and legitimate concerns with the administrative record" related to this matter, which the agency intends to address on remand. FDA Mem., ECF No. 6-1, at 6. Once the agency has done that, Vanda is free to assess the agency's decision and challenge that decision if it still believes a challenge is warranted.

Vanda's authorities all deal with the commonplace question of what to do after a court invalidates an agency action; Vanda cites no case in which a court vacated an agency action that it had not found unlawful or that the agency did not concede was erroneous. And such a scenario— awarding relief before establishing a right to relief—would run counter to the APA and basic

---

[1] And even then, "agency vacatur determinations are unusually well-suited to post-judgment briefing." *AARP v. U.S. EEOC*, 292 F. Supp. 3d 238, 242 (D.D.C. 2017).

jurisprudence.  *See Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135-36 (D.D.C. 2010) (concluding, in an APA action, that court "lacks the authority" to order vacatur of an agency action "without a determination of the merits"); *see also Frito-Lay, Inc. v. U.S. Dep't of Labor*, 20 F. Supp. 3d 548, 557 (N.D. Tex. 2014) (granting agency request for voluntary remand without vacatur because "[w]ithout a finding that the Final Order is arbitrary and capricious, or otherwise unlawful, a ruling vacating or setting aside the Final Order is premature").  Accordingly, this Court should decline Vanda's request for vacatur.[2]

## II. Even assuming Vanda may seek vacatur before a merits determination, vacatur is not warranted under the *Allied-Signal* factors.

Even assuming that this Court could order vacatur of the Partial Clinical Hold before a merits determination, the Court must still find that vacatur is an appropriate remedy under the *Allied-Signal* factors:  "(1) 'the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly),' and (2) 'the disruptive consequences of an interim change that may itself be changed.'"  *Am. Forest Res. Council*, 946 F. Supp. 2d at 44 (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).  An agency action need not be vacated if it is likely to be cured on remand and where substantial disruption would result from vacatur.  *See U.S. Sugar Corp. v. EPA*, 830 F.3d 579, 630 (D.C. Cir. 2016) (per curiam).  These factors weigh heavily against vacatur here.

### A. The procedural issues with the Partial Clinical Hold noted by Vanda are easily redressable on remand.

"The first *Allied-Signal* factor deals with the likelihood that [an action's] deficiencies can be redressed on remand, 'even if the agency reaches the same result.'"  *Am. Forest Res. Council*, 946 F. Supp. 2d at 44 (quoting *Black Oak Energy, LLC v. FERC*, 725 F.3d 230, 244 (D.C. Cir.

---

[2] Because there is no legal basis for vacatur of the Partial Clinical Hold, Vanda's alternate proposal of vacatur with a stay is equally inappropriate. *See* Vanda Opp'n 23-24.

2013)). "When an agency may be able readily to cure a defect in its explanation of a decision, the first factor in *Allied-Signal* counsels remand without vacatur." *Heartland Reg. Med. Ctr. v. Sebelius*, 566 F.3d 193, 198 (D.C. Cir. 2009); *see Air Transp. Ass'n of Am., Inc. v. U.S. Dep't of Agric.*, 317 F. Supp. 3d 385, 391 (D.D.C. 2018) ("If there is 'at least a serious possibility that the [agency] will be able to substantiate its decision on remand,' then vacatur is not necessary.") (quoting *Allied-Signal*, 988 F.2d at 151).  FDA easily meets that standard here.

On remand, FDA will address the very aspects of the Partial Clinical Hold underlying Vanda's lawsuit.  FDA will re-evaluate Vanda's scientific submissions about the necessity of an additional animal toxicology study to support long-term human clinical trials of tradipitant, and it will provide a full written explanation of the agency's analysis and position.  *See* FDA Mem. 6. The agency also will clarify the legal and regulatory basis for its decision.  *See id.*

Far from constituting a "fundamental flaw," *Air Transport Ass'n*, 317 F. Supp. 3d at 391-92, these issues may be readily redressed on remand, *see Heartland Reg. Med. Ctr.*, 566 F.3d at 198; *see also WorldCom, Inc. v. FCC*, 288 F.3d 429, 434 (D.C. Cir. 2002) (remanding without vacatur because there was "a non-trivial likelihood" that the agency's action had a valid legal basis).  Issues related to the legal and scientific basis for imposing a clinical hold—imposed here to ensure the safety of human clinical trial participants taking an investigational drug—are at the heart of FDA's expertise.  *See, e.g.*, *Center for Responsible Science v. Gottlieb*, 311 F. Supp. 3d 5, 7 (D.D.C. 2018) (FDA is the agency entrusted with "regulating research on human subjects" related to drug development); *ViroPharma, Inc. v. Hamburg*, 898 F. Supp. 2d 1, 22-23 (D.D.C. 2012) ("FDA's 'judgment[] as to what is required to ascertain the safety and efficacy of drugs . . . fall[s] squarely within the ambit of FDA's expertise.'") (quoting *A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1490 (D.C. Cir. 1995)); *see also* 21 U.S.C. § 355(i).  FDA's effort on remand will draw

on the agency's long-established base of knowledge about the safety data necessary before it is safe to conduct a human clinical trial, as well as its familiarity with Vanda's specific proposals. *See Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 282 F. Supp. 3d 91, 98 (D.D.C. 2017) (remanding without vacatur because correcting the problem found by the court did "not require that [the agency] begin anew, but only that [it] better articulate [its] reasoning"). It is thus more than "plausible"—indeed, it is highly likely—that FDA will be able to address the issues with the Partial Clinical Hold that it acknowledged in seeking a voluntary remand. *Am. Forest Res. Council*, 846 F. Supp. 2d at 45; *see Air Transport Ass'n*, 317 F. Supp. 3d at 392 (finding agency's "represent[ation] that there is a 'significant possibility' that it will be able to explain its authority . . . on remand" to be "sufficient" for remand without vacatur).

Vanda's other attacks on FDA taking further action also fail. First, Vanda claims that "FDA did not proceed under either statutorily prescribed manner" allowed for the imposition of a clinical hold. Vanda Opp'n 19. Not so.

At any time, FDA may impose a clinical hold if it determines that the investigational new drug poses an unreasonable risk to the safety of human subjects, or that a clinical hold should be issued for other reasons specified by FDA regulations. *See* 21 U.S.C. § 355(i)(3)(A)-(B); 21 C.F.R. § 312.42(b) (listing the grounds for imposing a clinical hold). As Vanda itself acknowledges, the Partial Clinical Hold letter specifically identified a duly promulgated regulation—21 C.F.R. § 312.42(b)(2)(i) (insufficient information to assess the risks to human subjects of the proposed studies)—as the reason for the hold. *See* Vanda Opp'n 9; *see also* 21 C.F.R. § 312.42(b)(1)(iv) (grounds for imposing a clinical hold include that the investigational new drug application "does not contain sufficient information required under [21 C.F.R.] § 312.23 to assess the risks to subjects of the proposed studies"). Vanda may disagree with FDA's

determination that it failed to provide "sufficient information" to "assess the risks" to the human subjects on whom it wants to test its drug, but that disagreement does not mean FDA issued the Partial Clinical Hold outside the statutory framework.

Second, Vanda avers that its scientific position is unassailable and contends that if FDA wanted to rebut its submissions, the agency should have done so already. *See* Vanda Opp'n 4, 16-17. But however confident Vanda might be in its science, evaluating that science is FDA's responsibility. FDA has already determined once that more evidence is necessary before lengthy human testing can commence; and it "is well positioned" to reevaluate that decision and further explain the regulatory and scientific bases for the Partial Clinical Hold decision on remand. *Standing Rock*, 282 F. Supp. 3d at 99; *see Public Citizen Health Research Grp. v. FDA*, 740 F.2d 21, 29 (D.C. Cir. 1984) ("When Congress has allocated to an agency the power to decide certain questions in the first instance, 'it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based . . . and apply that expertise.'") (quoting *McKart v. United States*, 395 U.S. 185, 194 (1969)). It is, indeed, difficult to imagine an area where the importance of agency expertise is greater than when the FDA is assessing a private company's scientific basis to test an unapproved, investigational drug on human subjects.

Beyond its logical flaws, Vanda's argument—that because FDA did not fully explain its analysis in the Partial Clinical Hold letter means it will never be able to do so—ignores the context in which this dispute arose: the collaborative back-and-forth between a drug company proposing a clinical trial and FDA. *See* FDA Mem. 2-3 (discussing process). Indeed, a clinical hold letter is prepared against the backdrop of appeal regulations designed for a mutual dispute resolution process within FDA rather than a rush to court to launch APA litigation. *See* FDA Mem. 3. Vanda has opted out of that process in favor of litigating. That is Vanda's prerogative, but FDA is entitled

to now have "a reasonable opportunity to . . . provide a reasoned explanation" of its choices.

*Standing Rock*, 282 F. Supp. 3d at 98 (quotations omitted); *see Berge v. United States*, 949 F. Supp.

2d 36, 46 (D.D.C. 2013) ("[P]enalizing the Agency for voluntarily undertaking a reconsideration

of its decision during the pendency of this case by now concluding that it has had too many 'bites

at the apple' is not consistent with this Circuit's policy of permitting reconsideration by the agency

. . . .").

Thus, the first *Allied-Signal* factor provides no support for vacatur.

> **B. Vacatur is belied by the risks of allowing a human clinical trial to begin despite FDA's reservations coupled with the absence of specific harm to Vanda from retaining the Partial Clinical Hold during the remand period.**

The second *Allied-Signal* factor concerns "the 'disruptive consequences' of vacatur." *Am.*

*Forest Res. Council*, 946 F. Supp. 2d at 46. But if, as true here, "the first prong of the *Allied-*

*Signal* analysis supports remand without vacatur, the second prong is 'only barely relevant.'" *Air*

*Transport Ass'n*, 317 F. Supp. 3d at 390 (quoting *Standing Rock*, 282 F. Supp. 3d at 108); *see*

*Securities Industry & Fin. Markets Ass'n v. U.S. CFTC*, 67 F. Supp. 3d 373, 435 (D.D.C. 2014).

Regardless, the second factor does not support vacatur here either.

Vanda asks this Court to take the extraordinary step of vacating FDA's Partial Clinical

Hold to greenlight the immediate launch of a human clinical trial because the company has

unilaterally decided there is no safety concern with testing its drug on humans for an extended

period of time. *See* Vanda Opp'n 20-21. But as noted above, "FDA's 'judgment[] as to what is

required to ascertain the safety and efficacy of drugs . . . fall[s] squarely within the ambit of FDA's

expertise.'" *ViroPharma*, 898 F. Supp. 2d at 22-23 (quoting *A.L. Pharma*, 62 F.3d at 1490).

Moreover, Vanda's claim that FDA has no concerns about the proposed clinical trials of

tradipitant is incorrect. Vanda relies on artificially—and inappropriately—separating safety

concerns from concerns about the sufficiency of the information available to assess safety risks.

Not having sufficient information to assess the risks *is* a safety concern; one cannot determine safety without sufficient evidence.   And as Vanda's Complaint notes, FDA has repeatedly expressed concern about the sufficiency of the available information to assess the safety risks of a long-term clinical trial for tradipitant.   *See* Compl., ECF No. 1, at ¶¶ 93 (reciting FDA position that Vanda "lacked adequate nonclinical safety data to support clinical trials beyond 3 months duration") (quotations omitted), 112 (same).

Against FDA's overarching concern about the safety of study participants, Vanda makes two arguments.   First, Vanda contends that vacatur is necessary so clinical trial participants can receive tradipitant without delay.   *See* Vanda Opp'n 22.   But that assumes Vanda is correct in its belief that tradipitant is safe for a long-term human clinical trial—an assumption FDA has rejected and that this Court should not make for the reasons noted above.   Moreover, Vanda does not contend that its hypothetical study participants wish to receive tradipitant regardless of FDA's concerns; nor would any of those participants have a right to do so.   *See Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 711 (D.C. Cir. 2007) (holding that there is no "right to procure and use experimental drugs").

Second, Vanda alleges a generalized business or reputational harm for maintaining the Partial Clinical Hold during remand.   *See* Vanda Opp'n 23. But Vanda identifies no specific, particularized harm that will befall the company from leaving the Partial Clinical Hold in place during a voluntary remand.   And although remand may add to Vanda's drug development timeline, "[g]aining FDA approval [for a new drug] can be a long process."[3]   *Abigail All.*, 495 F.3d at 697;

---

[3] Of course, Vanda may, at any time, obviate the need for remand by simply conducting the 9-month, animal toxicology study requested by FDA, which would provide additional information upon which the agency could assess the safety of a proposed 52-week human clinical trial for tradipitant.   Indeed, if Vanda had begun the additional animal study when FDA raised the issue in May 2018, *see* Compl. ¶ 90, the study could be nearly complete by now.

*see FTC v. Actavis, Inc.*, 570 U.S. 136, 142 (2013) (acknowledging that drug development involves "a long, comprehensive, and costly testing process").

To the extent Vanda is concerned about undue delay during the remand, FDA will move expeditiously.   Indeed, FDA already has begun the process of reevaluating the scientific submissions and addressing the issues acknowledged in the remand motion.

For all these reasons, the second *Allied-Signal* factor also does not support vacatur.

**CONCLUSION**

For the foregoing reasons, this Court should grant FDA's motion for a voluntary remand without vacatur.

Dated:  March 1, 2019                     Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Of Counsel:                               Civil Division

ROBERT P. CHARROW                         JAMES M. BURNHAM
General Counsel                           Deputy Assistant Attorney General
U.S. Department of Health
  and Human Services                      GUSTAV W. EYLER
                                          Acting Director
STACY CLINE AMIN
Chief Counsel                             ANDREW E. CLARK
Food and Drug Administration              Assistant Director
Deputy General Counsel
U.S. Department of Health                    /s/ James W. Harlow
  and Human Services                      JAMES W. HARLOW
                                          Trial Attorney
ANNAMARIE KEMPIC                          Consumer Protection Branch
Deputy Chief Counsel, Litigation          U.S. Department of Justice, Civil Division
Food and Drug Administration              P.O. Box 386
                                          Washington, D.C.  20044-0386
CLAUDIA ZUCKERMAN                         Telephone:  (202) 514-6786
Senior Counsel                            Fax:  (202) 514-8742
Office of the General Counsel             James.W.Harlow@usdoj.gov
Food and Drug Division

10903 New Hampshire Avenue
White Oak 31, Room 4550
Silver Spring, MD 20993-0002
Telephone:  (301) 796-8609
Claudia.Zuckerman@fda.hhs.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


Dated:  March 1, 2019                                    /s/  James W. Harlow
                                                                        James W. Harlow