## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Vanda Pharmaceuticals, Inc., et al.,

*Plaintiffs*,

v.

Food and Drug Administration, et al.,

*Defendants*.

Civil Action No. 1:19-cv-00301 (JDB)

Hon. John D. Bates

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION
## TO COMPLETE AND SUPPLEMENT THE ADMINISTRATIVE RECORD

Paul W. Hughes (D.C. Bar No. 997235)
  phughes@mwe.com
Michael B. Kimberly (D.C. Bar No. 991549)
Andrew A. Lyons-Berg (D.C. Bar No. 230182)
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, NW
Washington, D.C. 20001
(202) 756-8000 (office)
(202) 756-8087 (facsimile)

**TABLE OF CONTENTS**

Table of Authorities ............................................................................................................... ii

Glossary ................................................................................................................................ iv

Introduction ........................................................................................................................... 1

Argument ............................................................................................................................... 1

I.      FDA's discretion does not entitle it to skew the record. ............................................. 1

II.     FDA's specific objections fail. ................................................................................... 3

        A.      The 2005 review by Dr. Chalecka-Franaszek. ............................................... 3

        B.      Submissions following the original partial clinical hold. ............................... 5

        C.      Supplementation of the record. ..................................................................... 8

Conclusion ........................................................................................................................... 10

# TABLE OF AUTHORITIES

## Cases

*Am. Wild Horse Preservation Campaign v. Salazar*,
  859 F. Supp. 2d 33 (D.D.C. 2012).................................................................................1, 2

*Animal Legal Def. Fund v. Perdue*,
  872 F.3d 602 (D.C. Cir. 2017)........................................................................................9

*Animal Legal Def. Fund v. Vilsack*,
  110 F. Supp. 3d 157 (D.D.C. 2015).................................................................................2

*Bean Dredging, LLC v. United States*,
  773 F. Supp. 2d 63 (D.D.C. 2011)...............................................................................1, 2

*Butte Cty. v. Hogan*,
  613 F.3d 190 (D.C. Cir. 2010).........................................................................................2

*Chamber of Commerce of U.S. v. SEC*,
  443 F.3d 890 (D.C. Cir. 2006).........................................................................................1

*Charleston Area Med. Ctr. v. Burwell*,
  216 F. Supp. 3d 18 (D.D.C. 2016)...................................................................................6

*Cherry v. FCC*,
  641 F.3d 494 (D.C. Cir. 2011).......................................................................................10

*City of Dania Beach v. FAA*,
  628 F.3d 581 (D.C. Cir. 2010).....................................................................................4, 8

*Five Flags Pipe Line Co. v. Dep't of Transp.*,
  854 F.2d 1438 (D.C. Cir. 1988).......................................................................................7

*Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*,
  345 F. Supp. 3d 1 (D.D.C. 2018).................................................................................2, 3

*Fund for Animals v. Williams*,
  391 F. Supp. 2d 191 (D.D.C. 2005).....................................................................1, 2, 3, 4

*Genuine Parts Co. v. EPA*,
  890 F.3d 304 (D.C. Cir. 2018).........................................................................................2

*Greenbrier Hosp., LLC v. Azar*,
  2019 WL 935172 (E.D. La. Feb. 25, 2019).....................................................................7

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) .........................................................................................................7

*Lee Mem. Hosp. v. Burwell*,
  109 F. Supp. 3d 40 (D.D.C. 2015)...................................................................................2

*Nuclear Energy Inst., Inc. v. EPA*,
  373 F.3d 1251 (D.C. Cir. 2004)........................................................................................5

*Oceana, Inc. v. Ross*,
  290 F. Supp. 3d 73 (D.D.C. 2018)............................................................................*passim*

## TABLE OF AUTHORITIES (continued)

*Ramos v. Nielsen*,
    2018 WL 3109604 (N.D. Cal. June 25, 2018).......................................................................3

*San Luis & Delta-Mendota Water Auth. v. Locke*,
    776 F.3d 971 (9th Cir. 2014)...............................................................................................9

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
    435 U.S. 519 (1978)...........................................................................................................2

**Statute and Regulations**

44 U.S.C. § 1510(e) ....................................................................................................................7

21 C.F.R.
    § 10.3 ...............................................................................................................................6
    § 10.25(a)(1) ....................................................................................................................6
    § 10.30(a) .........................................................................................................................7
    § 10.30(i) ..........................................................................................................................7
    § 10.30(i)(6).................................................................................................................7, 8
    § 10.65(f) .........................................................................................................................7
    § 10.65(h) ........................................................................................................................7
    § 312.23(a)(8) ................................................................................................................10
    § 312.42(b)(1)(iv) ..........................................................................................................10

**Other Authorities**

FDA, CDER Offices and Divisions (Sept. 27, 2018) ...................................................................6

*Guidance for Industry*, Expedited Programs for Serious Conditions—Drugs and
    Biologics (May 2015)..........................................................................................................8

*Revision of Administrative Practices and Procedures; Meetings and Correspond-*
    *ence; Public Calendars; Partial Stay, Amendments, and Correction*, 66 Fed.
    Reg. 12,848 (Mar. 1, 2001) ................................................................................................7

## GLOSSARY

CDER ............Center for Drug Evaluation and Research (within FDA)

FDA ...............U.S. Food and Drug Administration

FDCA ............Food, Drug, and Cosmetic Act

FDRR.............Formal Dispute Resolution Request

IND ................Investigational New Drug

MPPRC..........Medical Policy and Program Review Council (within CDER)

## INTRODUCTION

FDA's position on the scope of the record is untenable. The agency asserts that it can refuse to consider adverse evidence produced after December 2018, but that it nevertheless is entitled to "gather additional materials" after that date—if those additional materials are favorable to the agency. FDA A.R. Mem. 8. That position is irreconcilable with the bedrock principle that "[a]n agency 'may not skew the record in its favor by excluding pertinent but unfavorable information.'" *Am. Wild Horse Preservation Campaign v. Salazar*, 859 F. Supp. 2d 33, 41 (D.D.C. 2012) (quoting *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005)). And as described below, FDA's specific objections to the categories of documents submitted by Vanda and others are meritless. Record completion, and supplementation, are necessary and appropriate here.

## ARGUMENT

## I.    FDA'S DISCRETION DOES NOT ENTITLE IT TO SKEW THE RECORD.

FDA's central claim is that the agency's "significant discretion about how to structure [its] proceedings on remand" (FDA A.R. Mem. 6) entitles it to ignore materials submitted by Vanda and others during the remand, while simultaneously going outside the pre-remand record by "gather[ing] additional materials" favorable to the agency (*id.* at 8). That remarkable assertion has no basis in law.

Plaintiffs agree with the established points that "a reviewing court may allow an agency to supplement the record with additional evidence and explanation following remand," and that, "when the reviewing court does not expressly require additional fact gathering on remand, 'the agency is typically authorized to determine, in its discretion, whether such fact gathering is needed.'" *Bean Dredging, LLC v. United States*, 773 F. Supp. 2d 63, 78 (D.D.C. 2011) (quoting *Chamber of Commerce of U.S. v. SEC*, 443 F.3d 890, 900 (D.C. Cir. 2006)); *see* FDA A.R. Mem. 6-8. Likewise, an agency may exercise its discretion to limit its consideration to only those materials that existed prior to the remand. But no case FDA cites stands for the extraordinary proposition that an agency may do *both* at the same time: that is, that the agency may selectively reopen

1

the administrative record to admit new favorable materials, while keeping out any contrary evidence.[1]

Indeed, such a position would be contrary to fundamental principles of administrative decisionmaking. An agency acts arbitrarily and capriciously when it "ignore[s] evidence contradicting its position" or "minimize[s] such evidence without adequate explanation." *Genuine Parts Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018) (quoting *Butte Cty. v. Hogan*, 613 F.3d 190, 194 (D.C. Cir. 2010)). That rule would mean nothing, however, if agencies were free to manipulate the scope of the record to achieve the same result. Thus, it is equally well established that "[a]n agency 'may not skew the record in its favor by excluding pertinent but unfavorable information.'" *Am. Wild Horse*, 859 F. Supp. 2d at 41 (quoting *Fund for Animals*, 391 F. Supp. 2d at 197); *accord, e.g.*, *Lee Mem. Hosp. v. Burwell*, 109 F. Supp. 3d 40, 47 (D.D.C. 2015) (same); *Animal Legal Def. Fund v. Vilsack*, 110 F. Supp. 3d 157, 159 (D.D.C. 2015) (same); *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 345 F. Supp. 3d 1, 10 (D.D.C. 2018) ("An agency may not scrub the record of all evidence that does not support the agency's final decision."). But that is precisely what FDA claims license to do here.

Nor would preventing FDA from having it both ways somehow "impose procedural requirements on [the] agency" in violation of *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519 (1978). FDA A.R. Mem. 6; *see Vt. Yankee*, 435 U.S. at 544 (courts may not "devise[] procedures to be followed by the agency on the basis of [the court's] conception of how the public and private interest involved could best be served."). Plaintiffs are not suggesting that FDA had to follow any particular procedure on remand. Our point is merely that whatever procedure the agency *does* choose must conform to the APA's prohibition

---

[1]    In *Bean Dredging*, for example, the court upheld an agency's decision to deny a regulated party the opportunity to submit new evidence on remand. 773 F. Supp. 2d at 74-77. Critically, though, the agency did not simultaneously reopen the record to insert new facts favorable to its own position. *See id.* at 78 ("[T]he NPFC did not even reopen the administrative record to consider new evidence in support of its prior determination. As Bean Dredging concedes, in its new determination, the NPFC has relied on the same evidence as in its prior adjudication.") (quotation marks omitted).

on arbitrary and capricious government behavior. And a procedure that selectively considers only the evidence that is favorable to the agency's position certainly does not meet that standard. *See also* Pls. S.J. Reply 15-19.

## II.   FDA'S SPECIFIC OBJECTIONS FAIL.

As we explained in our principal memorandum, several categories of documents should be included in the record, either through completion or supplementation. *See* Vanda AR Mem. 3-12. FDA objects to each category, but those objections lack merit.

### A.   The 2005 review by Dr. Chalecka-Franaszek.

FDA objects to the inclusion of Dr. Chalecka-Franaszek's 2005 review, an internal FDA document that contradicts one of the Remand Response's key conclusions. *See* Pls. A.R. Mem. 3-5. FDA says that there is "no evidence that the FDA decisionmaker drilled down . . . to independently consider" Dr. Chalecka-Franaszek's review (FDA A.R. Mem. 15)—but that is incorrect. This is not some anonymous citation hidden in a footnote; rather, it is a contrary document expressly noted by FDA in the very passage that is the centerpiece of FDA's Remand Response. *See* FDA-11117. That context alone is enough to provide "non-speculative grounds" to believe Dr. Chalecka-Franaszek's review was considered by the decisionmaker. *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 78-79 (D.D.C. 2018).

FDA's argument is also beside the point, because, as we explained, the record must include those documents "indirectly considered" by FDA. *Oceana Inc.*, 290 F. Supp. 3d at 77; *see* Pls. A.R. Mem. 2-4. And that category includes "materials relied on by subordinates" like Dr. Wang (*Ramos v. Nielsen*, 2018 WL 3109604, at *3 (N.D. Cal. June 25, 2018); *see* FDA-10839), along with materials "discussed in [the] analysis" of documents that were directly considered (*Fort Sill Apache Tribe*, 345 F. Supp. 3d at 10). Dr. Chalecka-Franaszek's review is both. In short, "the defendants cannot justify the exclusion of these highly relevant, adverse documents from the administrative record simply by claiming that the documents were not 'directly or indirectly' considered by the agency." *Fund for Animals*, 391 F. Supp. 2d at 199.

And in any event, we explained that even if completion of the record with Dr. Chalecka-Franaszek's review was rejected, the Court should nevertheless order supplementation of the record to include it, under the rule allowing supplementation where "the agency deliberately or negligently excluded documents that may have been adverse to its decision." *Oceana, Inc.*, 290 F. Supp. 3d at 77 (quoting *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010)); *see* Pls. A.R. Mem. 5 n.1. FDA's only response is to call our allegation of negligence "conclusory" (FDA A.R. Mem. 16)—but it is not conclusory at all. Rather, we noted that Dr. Chalecka-Franaszek's contrary finding was noted *in the very passage* of Dr. Wang's later review that FDA relies on so heavily in the Remand Response. *See* Pls. A.R. Mem. 5 n.1. We stand by our position that, given those circumstances, any failure by the agency to consider Dr. Chalecka-Franaszek's review would have been negligent, and would warrant supplementation of the record. *See also Fund for Animals*, 391 F. Supp. 2d at 198 ("A plaintiff can make a *prima facie* showing that an agency excluded adverse information from the record by proving that the documents at issue (1) were known to the agency at the time it made its decision, (2) are directly related to the decision, and (3) are adverse to the agency's decision.") (quotation marks omitted).

FDA's conduct should not pass without notice. FDA cannot dispute that Dr. Chalecka-Franaszek—an FDA reviewer—reached a conclusion favorable to Vanda. Another reviewer, Dr. Wang, reached a different result, adverse to Vanda, with respect to the very same study. FDA is plainly aware that both reviews (each conducted by an FDA doctor) exist. But, instead of explaining *why* FDA now credits Dr. Wang's analysis over that of Dr. Chalecka-Franaszek, FDA has chosen instead to disregard the existence of the Vanda-favorable analysis entirely. By denying its inclusion in the administrative record, FDA is not even permitting Vanda to review the contents of that document.

Agencies are not allowed to act in this fashion. When an agency reaches a decision that is at odds with its own staff's earlier evaluation, the agency must explain *why* it has done so. It cannot avoid inconsistent analysis simply by denying inclusion of the material in the administrative record. It is hard to fathom clearer evidence of unreasonable agency action.

4

**B.      Submissions following the original partial clinical hold.**

Vanda separately explained why, if FDA did in fact reopen the record on remand, FDA was obligated to consider Vanda-favorable material that was submitted to it. Pls. A.R. Mem. 5-9.

**The Complaint.** FDA asserts that on remand, it did not consider Vanda's original complaint and the scientific articles it cites. FDA A.R. Mem. 12-14. This argument is not credible because FDA requested a remand precisely "*to address certain procedural issues Vanda noted in its Complaint*, including the allegations about the agency's response to scientific arguments submitted by Vanda." Dkt. 6-1, at 2 (emphasis added); *see* Pls. A.R. Mem. 6, 8. FDA asked for—and received—a remand for the specific purpose of addressing the arguments contained in Vanda's complaint. FDA has identified no basis on which, having asked to evaluate the complaint, it was free to disregard material in the complaint at odds with the result that the agency preferred to reach.

Nor can FDA complain that it had not been given "a fair opportunity to entertain" these arguments "in the administrative forum." FDA A.R. Mem. 13 (quoting *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1290 (D.C. Cir. 2004). On remand, FDA returned to "the administrative forum" with full forewarning of Vanda's arguments. It simply decided not to address them.

To be sure, as we have explained in the accompanying summary judgment briefs, we do not believe that FDA's conduct on remand constitutes new administrative action; rather, the agency simply supplied new reasons for a decision already made. FDA never resubmitted the question of a 9-month dog study to the Medical Policy and Program Review Council (MPPRC), and thus the signatory of the Remand Response was not at liberty to overrule the MPPRC's prior determination that adherence to the ICH Guidance is mandatory. As a result, everything FDA did on remand was impermissibly post hoc. But, if we are wrong on that score, then FDA was surely obligated to respond to the contrary evidence presented to it.

**The Humane Society letter.** FDA objects to the inclusion in the record of the letter, and attached scientific studies, sent to the agency during the remand period by the Humane Society of the United States. *See* FDA A.R. Mem. 9-11. But as we explained—and as FDA agrees—in order to complete the record with these documents, Vanda "must only 'put forth concrete evidence' and

'identi[f]y reasonable, non-speculative grounds for [its] belief that the documents were considered by the agency and not included in the record.'" *Oceana, Inc.*, 290 F. Supp. 3d at 78-79 (quoting *Charleston Area Med. Ctr. v. Burwell*, 216 F. Supp. 3d 18, 23 (D.D.C. 2016)).

Here, Vanda has identified "grounds for its belief" that far surpass being merely "reasonable" and "non-speculative": When the Humane Society submitted the materials "for [FDA's] consideration during the Vanda Pharmaceuticals voluntary remand," the director of the Center for Drug Evaluation and Research (CDER), Dr. Janet Woodcock, explicitly replied that "*[w]e will take your comments into account* and *evaluate the studies you reference*." Pls. A.R. Mem, Ex. M. If a high-level official's commitment to "take" certain materials "into account" is not a non-speculative reason to believe the agency actually considered those materials, nothing is. And as for FDA's observation that Dr. Woodcock was not the immediate decisionmaker (FDA A.R. Mem. 10), true enough—but she was the immediate decisionmaker's boss. *See* FDA, CDER Offices and Divisions (Sept. 27, 2018), https://perma.cc/P26E-4SDD. Dr. Woodcock is also a member of the MPPRC, the body that made the original clinical hold decision. *See* FDA-10872.

FDA elsewhere intimates (but does not explicitly argue) that Dr. Woodcock may have retracted her commitment to consider the Humane Society materials. *See* FDA S.J. Mem. 38 n.11. But the letter FDA cites is not a retraction. Rather, it simply stated (over a month later) that "FDA won't be able to *comment* on your request," "[d]ue to pending legal matters." Dkt. 30-2 (emphasis added). Inability to comment on active litigation is certainly not the same thing as inability to consider scientific evidence.

The letter is part of the administrative record for a second, independent reason: FDA regulations compel that result. Pls. A.R. Mem. 9 n.3. FDA misunderstands our point. *See* FDA A.R. Mem. 10. The "petition" in question is not the Humane Society's letter, but Vanda's Investigational New Drug application (IND) for tradipitant. *See* 21 C.F.R. § 10.3 (defining "[p]etition" to mean any "document requesting the Commissioner . . . to take or not to take any . . . form of administrative action"); *cf. id.* § 10.25(a)(1) (explaining that a new drug application is a "petition"). And the regulations provide that "[t]he record of the administrative proceeding" on "any petition"

includes "[a]ll documents filed with the Division of Dockets Management under § [10.65(f)]."[2] *Id.*

§ 10.30(a), (i). Section 10.65(f) in turn provides that "FDA promptly will file in the appropriate

administrative file . . . *all correspondence* . . . that relate[s] to a matter pending before the agency."

*Id.* § 10.65(f) (emphasis added).

Putting the pieces together, the Humane Society's submission was "correspondence"

"relat[ing] to" Vanda's IND and the clinical hold placed on it (21 C.F.R. § 10.65(f)); FDA was

thus required to file that correspondence "in the appropriate administrative file" (*id.*). And "[a]ll

documents filed" in that file are made part of the administrative record by Section 10.30(i). *Id.*

§ 10.30(i)(6).[3] The Humane Society's letter and the attached studies are part of a properly consti-

tuted administrative record for this independent reason, as well.

FDA's primary response is to suggest that these materials were somehow submitted too

late. *See* FDA A.R. Mem. 9-10. But this is argument supplied by FDA lawyers; if FDA had denied

---

[2]   The Code of Federal Regulations lists this cross-reference not as "§ 10.65(f)" but as "§ 10.65(h)." *See* 21 C.F.R. § 10.30(i)(6). A rulemaking in 2001 temporarily changed that reference from "(f)" to "(h)," but it was supposed to automatically revert back to "(f)" later in 2001. *See Revision of Administrative Practices and Procedures; Meetings and Correspondence; Public Calendars; Partial Stay, Amendments, and Correction*, 66 Fed. Reg. 12,848, 12,848 (Mar. 1, 2001). It appears that the editors of the Code of Federal Regulations have not updated the codification to make that change, but in a typographical conflict between the Federal Register and the Code of Federal Regulations, the Federal Register controls. *See* 44 U.S.C. § 1510(e) (specifying that the text of the Code of Federal Regulations "shall be *prima facie evidence* of the text of the documents") (emphasis added); *Greenbrier Hosp., LLC v. Azar*, 2019 WL 935172, at *4 (E.D. La. Feb. 25, 2019) ("The Court declines to apply the erroneous text published in the CFR that, due to a clerical error, differed from the text of the corrected final rule published in the Federal Register."); *cf. Five Flags Pipe Line Co. v. Dep't of Transp.*, 854 F.2d 1438, 1440 (D.C. Cir. 1988) ("[W]here the language of the Statutes at Large conflicts with the language in the United States Code that has not been enacted into positive law, the language of the Statutes at Large controls."). In any event, a cross-reference to Section 10.65(h) would make no sense, because that subsection does not say anything about filing documents with the Division of Dockets Management. *See* 21 C.F.R. § 10.65(h).

[3]   FDA is correct that Section 10.30 is titled "Citizen petitions," but that section explicitly "applies to *any petition* submitted by a person . . . except to the extent that other sections of this chapter apply different requirements to a particular matter." 21 C.F.R. § 10.30(a) (emphasis added); *cf. Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) ("The caption of a statute . . . cannot undo or limit that which the [statute's] text makes plain.") (quotation marks omitted).

consideration of the letter on that ground, it was for the agency to say so in the Remand Response. See Pls. S.J. Reply 18. Additionally, this timeliness argument has no bearing on either Dr. Woodcock's commitment to consider the information or the separate regulations compelling inclusion of this material in the administrative record.

Further, the lawyer-supplied argument falters. The Humane Society submitted its letter midday on Wednesday, April 24—prior to the deadline of April 28. *See* Vanda A.R. Mem, Ex. M (letter submitted at 12:24 p.m. on Wednesday, April 24). If FDA believed this was insufficient time to review the material, it could have requested an extension. Additionally, that an expert agency of the United States could not review a six-page letter and six scientific studies over that window is simply unreasonable. And even if that schedule were tight, Dr. Woodcock's commitment to "evaluate the studies you reference" (*id.*) would constitute "non-speculative grounds to believe" that the agency buckled down and considered the studies anyway.

**Breakthrough Therapy Application.** The Breakthrough Therapy designation application submitted by Vanda is also part of the record by virtue of the same regulatory scheme. *See* Vanda A.R. Mem. 7, 9. A Breakthrough Therapy application is filed as part of the IND process, and it is "submitted to the IND administrative file." See FDA, *Guidance for Industry*, Expedited Programs for Serious Conditions—Drugs and Biologics (May 2015), https://www.fda.gov/media/86377/download. Because the Breakthrough Therapy application is filed in the IND docket, it is part of the administrative record pursuant to 21 C.F.R. § 10.30(i)(6). FDA's failure to include it in the administrative record is error that the Court should correct.

### C.    Supplementation of the record.

**Studies.** We have submitted a group of scientific studies that demonstrate the type of analysis required to evaluate whether a test (here, a 9-month dog toxicology study) accurately predicts an outcome (here, the toxicity of a drug in humans). *See* Vanda A.R. Mem. 9-10. We explained that these studies are appropriate for inclusion in the record as "background information . . . needed 'to determine whether the agency considered all the relevant factors.'" *Oceana, Inc.*, 290 F. Supp. 3d at 77-78 (quoting *City of Dania Beach*, 628 F.3d at 590) (listing this as one of the "unusual

circumstances" in which supplementation of the administrative record is proper); *accord, e.g.*, *Animal Legal Def. Fund v. Perdue*, 872 F.3d 602, 611 (D.C. Cir. 2017). These studies exemplify what science-based analysis of a test's predictive power would look like under these circumstances— highlighting that FDA has performed no such analysis.

FDA's objections to the inclusion of this material are meritless. The agency first suggests that Vanda has failed to submit them through administrative channels, but that is again beside the point. Vanda is not asserting that the agency did or should have considered these particular studies, nor is Vanda asking the Court to rely on them for their substantive conclusions—although those conclusions *are* contrary to FDA's decisionmaking. Rather, they must be included to demonstrate the *kind* of analysis that good science demands, and that is missing from the Remand Response. *See, e.g.*, *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014) (explaining that this exception "permits a district court to consider extra-record evidence to develop a background against which it can evaluate the integrity of the agency's analysis"). That kind of demonstrative evidence does not require prior presentation to the agency. And in any event, as we explained, Vanda has had no opportunity to contest this particular issue in an administrative forum, since the Remand Response was the first time FDA so much as hinted that its decision was based on anything other than the ICH Guidance, applied as "a requirement, not a recommendation." FDA-10990; *see* Pls. A.R. Mem. 11.[4]

FDA also suggests that it has in fact "considered all the relevant factors" (*Oceana, Inc.*, 290 F. Supp. 3d at 78), in that the agency supposedly "show[ed] that new toxicological findings are observed in 9-month nonrodent studies" (FDA A.R. Mem. 17). Whether or not that statement is accurate, it does not get FDA off the hook. What these articles analyze—and what FDA has

---

[4]   As for the suggestion that "gross procedural deficiencies" are required to invoke this exception, the D.C. Circuit has applied the exception without stating any such requirement. *See Animal Legal Def. Fund*, 872 F.3d at 611, 620. And in any event, FDA itself in requesting voluntary remand has "identified . . . substantial and legitimate concerns with the administrative record" in this case. Dkt. 6-1, at 6.

completely failed to address—is whether such new findings in dogs are relevant to predicting *human* toxicological outcomes. *That* is the "relevant factor" that FDA has not "considered." The agency cannot rationally say that a toxicology profile can never be "sufficient" or "[a]dequate" without a 9-month dog study (21 C.F.R. §§ 312.42(b)(1)(iv), 312.23(a)(8)), when it has not investigated the extent to which dog toxicities actually predict human toxicities. *Cf.* FDA A.R. Mem. 18.

**Declarations.** FDA objects to the submission of standing declarations from the individual Plaintiffs, representing that, although "it is unclear whether the individual plaintiffs have standing," "FDA is not challenging" their standing at this time. FDA A.R. Mem. 18. But "Article III standing is a jurisdictional requirement that cannot be waived by the parties." *Cherry v. FCC*, 641 F.3d 494, 497 (D.C. Cir. 2011). Plaintiffs must make a record now, in case FDA should change its mind at a later stage of proceedings.

## CONCLUSION

For the foregoing reasons, the Court should order FDA to complete, and should itself supplement, the administrative record.


Dated: August 21, 2019                    Respectfully submitted,

                                          /s/ *Paul W. Hughes*

                                          Paul W. Hughes (D.C. Bar No. 997235)
                                             phughes@mwe.com
                                          Michael B. Kimberly (D.C. Bar No. 991549)
                                          Andrew A. Lyons-Berg (D.C. Bar No. 230182)
                                          MCDERMOTT WILL & EMERY LLP
                                          500 North Capitol Street, NW
                                          Washington, D.C. 20001
                                          (202) 756-8000 (office)
                                          (202) 756-8087 (facsimile)